### JOHN GLASS v. THE STATE.

#### No. 2903. Decided February, 1904.

**1.—Evidence—Counterfeiting Coin.**

Under an indictment charging defendant with knowingly passing as true a counterfeit coin, if the evidence shows that the imitation or resemblance of the coin is such as is capable of imposing on persons of ordinary observation, and is calculated to deceive an honest, sensible and unsuspecting person of ordinary care dealing with men supposed to be honest, it is sufficient to sustain a conviction.

**2.—Same—Sufficient Deception.**

Where defendant in the early part of night, in exchange for two nickels, handed a person what purported to be a dime, but which in fact was a one-cent copper piece colored with a substance that made it appear like a dime, although upon closer inspection the fraud could be detected, the deception was sufficient to constitute the offense defined by the statutes of this State, the intent to defraud being proved sufficiently by other circumstances.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal from a conviction for knowingly passing as true a counterfeit coin; penalty, imprisonment for two years in the penitentiary.

The opinion sufficiently states the case.

*Douglass & Shurtleff*, for appellant.—The charge of passing a counterfeit dime is not sustained by proof that a copper cent with its original inscriptions and marking unaltered and in no sense purporting to be a dime, was, by artifice and false representations, aided only by a change in the color, passed for a dime. The crime of passing counterfeit money being a distinct phase of swindling and being made in any case a felony because the means adopted for perpetrating the fraud, viz., the use of a counterfeit coin, and a copper cent does not become a dime by merely changing its color to resemble silver. Roberts v. State, 2 Head (Tenn.), 501; United States v. Sprague, 48 Fed. Rep., 828; United States v. Stevens, 52 Fed. Rep., 120; United States v. Hopkins, 26 Fed. Rep., 443.

*Howard Martin,* Assistant Attorney-General; *C. F. Greenwood,* County Attorney, and *B. Y. Cummings,* Assistant County Attorney, for the State.—Appellant contends that the evidence in this case only proves a case of swindling; that the inscription upon the copper would have to be changed, and that the copper by its marks, words, figures, etc., must purport to be a dime in order to be counterfeit. To this contention we can not agree. In coining a piece of money originally, of course the counterfeiter would undertake with all possible skill to imitate the true

coin which the counterfeit piece would purport to be, but when he seeks to make a true and genuine coin already in existence resemble a coin of higher value, he has to deal with everything on the true coin, and how could he efface it? The stamp, the pictures, the words and figures are already there, and how could he successfully obliterate them? So the Legislature having this in mind, in enacting our statutes wisely provided that the resemblance need not be perfect, but the test is, was the change, the alteration, the resemblance produced by the application of liquid of such a character, taking the words and figures and other marks, that were in common on both coins, as to produce the desired result, and thus deceive an ordinary person of ordinary caution, in the every day and ordinary affairs of life, and under the authorities in such a case as this, it is a question of fact for the jury. 7 Am. and Eng. Enc. of Law, 2 ed., sub. 3, and notes, 877; United States v. Hargrave, 17 Int. Rev. Rec., 39.

DAVIDSON, Presiding Judge.—Appellant was convicted of knowingly passing as true a counterfeit coin, the penalty assessed being two years in the penitentiary. The proof shows that it was a copper cent, changed by some chemical process to resemble a ten-cent piece; that he passed it to T. H. Forrester, under the following circumstances: That defendant and Jim Johnson, on January 31, 1903, were together. Defendant went into the store of Forrester, in the early part of that night; stated he wanted change for a dime, and handed Forrester what he took to be a dime. He gave him two nickels in exchange for the dime. Forrester turned to place the money in the drawer, and noticed as he did so that defendant went out of the house in a run. He immediately looked at the money defendant had given him, and saw it was a copper cent, the color of it being changed so as to look like a dime. Defendant called it a dime, and asked for change for a dime. Immediately upon discovering the cheat, Forrester went to the sidewalk and hallooed to defendant two or three times to stop. He finally did so, and came back, meeting Forrester. Forrester told him that the dime he had given him was a copper cent, and wanted him to return his money. Appellant immediately returned the two nickels, and Forrester gave appellant the copper. Appellant looked at the copper and said, "I am a son of a bitch." The copper he gave Forrester "was colored like silver and looked like a dime." The sheriff went in pursuit of defendant and Johnson, and finally arrested them, and found some copper cents on them. "The coppers were bright, like silver," but the bright appearance had partially rubbed off. They resembled dimes, and did not look as much like them as they had before they had been rubbed off. "I got a bottle of stuff that Mr. Treadwell turned over to us and turned it over to the county attorney. I had some experience with the liquid in the bottle Mr. Treadwell had, in applying it to copper cents. I put it on them, and then rubbed the copper with a piece of paper, and it turned them the color of a dime, and made the coppers look like a new silver dime. I

treated the coppers with the stuff several times, and it had the same effect every time. Don't know what the stuff was, but it looked like quicksilver. On cross-examination this witness says there is a difference in color between a dime and one cent piece. A copper is yellow and a little larger than a dime. There is a difference between the edge of a copper and a dime. A dime is milled on the edges, and has a woman's head on one side, and reads 'one dime' on the other side; and a copper cent has an Indian's head on it. The reading matter on the copper was not changed. When the fluid was applied to the coppers it made them look like dimes. After that stuff was applied to the coppers it is a fact that you could detect they were not dimes if you examined them closely."

It is contended this evidence is not sufficient to support the judgment of conviction. Article 557, Penal Code, provides: "He is guilty of counterfeiting who makes, in the semblance of true gold or silver coin, any coin of whatever denomination, having in its composition a less proportion of the precious metal of which the true coin intended to be imitated is composed, than is contained in such true coin, with intent that the same should be passed in this State or elsewhere." Article 558: "He is also guilty of counterfeiting who, with like intent, alters any coin of lower value so as to make it resemble coin of higher value." Article 559: "The resemblance between the true and the false coin need not be perfect to constitute the offense of counterfeiting." Article 561 provides the punishment against those who shall pass or offer to pass as true, or bring into this State, with intent to pass as true, any counterfeit coin, knowing the same to be counterfeit, etc. We believe the evidence is sufficient to bring it within the provisions of the statutes cited. If the imitation or resemblance is such as is capable of imposing on persons of ordinary observation, this would be sufficient; and it is further sufficient if the alleged counterfeit coin bears such resemblance or likeness to the genuine as to be calculated to deceive an honest, sensible and unsuspecting man of ordinary observation and care dealing with men supposed to be honest. This resemblance of the counterfeit coin to the genuine must be sufficiently strong to deceive persons exercising ordinary care. 7 Am. and Eng. Ency. of Law, 2 ed., 877; United States v. Murray, 4 Wash., (U. S.), 733; United States v. Mitchell, 1 Baldw. (U. S.), 366; United States v. Abrams, 18 Fed. Rep., 823; Dement v. State, 2 Head (Tenn.), 501; 48 Fed. Rep., 828; 26 Fed. Rep., 443. It is not necessary that the counterfeit be exact in its similitude. It is enough that the similarity in the likeness is sufficient to deceive a man of ordinary observation. See also United States v. Ottey, 31 Fed. Rep., 68. The intent of appellant to defraud is placed beyond any question. The coin was passed at night and under circumstances that led the witness Forrester to believe it was a dime; it had the appearance of a dime, and was passed by appellant as a dime. Under these circumstances it was sufficient to deceive any honest, unsuspecting man of ordinary observation, dealing with another supposed to be honest. Under the circumstances detailed in the testimony it had the effect and

purpose intended by appellant. Our statute has expressly provided that the resemblance between the true and the false need not be perfect to constitute the offense of counterfeiting. So under that statute we believe the evidence is sufficient. While it was not a true representation of a dime, it was sufficient to impose upon any ordinary man in ordinary transactions; and the evidence brings it within the rule set out in our statute.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*